# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MARK FUNK, *et al.*,  )
 )
 Plaintiffs,  )
 )
v.  )
 )  Case No. 17-1099-JTM-KGG
 )
PINNACLE HEALTH FACILITIES  )
XXXIII, LP, d/b/a CLEARWATER  )
NURSING & REHAB CENTER,  )
 )
 Defendant.  )
_____  )

## MEMORANDUM & ORDER ON MOTION TO QUASH

Now before the Court is Plaintiffs' "Motion for Protective Order and Motion to Quash" the deposition of non-party expert witness Betty Pankratz. (Doc. 61). Also before the Court is the "Motion to Extend Defendant's Expert Disclosure Deadline" filed by Defendant Pinnacle Health Facilities (Doc. 66). Having reviewed the submissions of the parties, Plaintiffs' motion is **DENIED** as more fully set forth below. The Court also **GRANTS** Defendant's Motion (Doc. 66).

## FACTUAL BACKGROUND

The factual background of this case was summarized by the District Court in its Order denying Plaintiffs' Motion to Amend and granting Defendant's Motion to Dismiss Plaintiffs' negligence claim.

1

> Plaintiffs, Mark Funk and Alan Funk, filed the present negligence and wrongful death suit against defendant, Pinnacle Health Facilities, based on Dorothy Funk's fall at the Clearwater Nursing and Rehabilitation Center in Clearwater, Kansas. From September 29, 2014, to December 1, 2014, Dorothy was a resident at the Clearwater Nursing facility.
>
> Plaintiffs allege that on October 1, 2014, Clearwater's records indicate that Dorothy suffered a non-injury fall on the premises and her Care Plan was updated to say, '[p]rovide Dorothy with grabber to alleviate her reaching forward from her wheelchair . . . and endangering [her] safety.' Nine days later on October 10, the Care Plan added or initiated this goal: 'Dorothy will remain free from significant injuries resulting from falls.' Plaintiffs additionally allege that this non-[injury] fall was not reported to Mark Funk, holder of Dorothy's durable power of attorney. Knowledge of the non-injury fall was not made known to Mark or Alan Funk until the medical records were provided after Dorothy's death.
>
> Plaintiffs further allege that on December 1, 2014, Dorothy fell out of her wheelchair while reaching forward, fracturing her hip. According to the Clearwater EMS Report, the fall was unwitnessed, but a Clearwater staff member heard Dorothy screaming after the fall. December 1, 2014, was the last time that Clearwater Nursing provided care to Dorothy.

(Doc. 21, at 1-2.)

Because of issues with scheduling depositions in this case, an in-person status conference was held with the Court on June 13, 2018.

> At that time, Plaintiffs' counsel orally moved to require Defendant to disclose its expert witnesses prior to Plaintiffs' experts being deposed. The Court denied Plaintiffs' oral Motion and ordered that Plaintiffs' experts be deposed between July 16, 2018 and July 31, 2018. See

> Dkt. 50. The Court then extended Defendants' expert
> disclosure deadlines to August 30, 2018 (thirty days after
> the latest possible date set for Plaintiffs' experts'
> depositions). See Dkt. 49.

(Doc. 66, at 3.) This Court admonished the parties for their failure to cooperate in scheduling the depositions, calling their communication "ineffective." (Doc. 50.)

Plaintiffs bring the present motion for a protective order and to quash the deposition of third-party witness Betty Pankratz "until such time as (a) defendant has made its own expert witness disclosures and (b) a protective order has been entered to protect Mrs. Pankratz from harassment, annoyance and abusive questioning by defense counsel." (Doc. 61, at 1.) Plaintiffs contend that defense counsel was "harassing, argumentative, rude, annoying, and hostile" to their other nursing expert, Judy Diggs, during her deposition. (*Id.*)

**A.  Standards for Discovery and Motions to Quash.**

Pursuant to Fed.R.Civ.P. 26(b),

> [p]arties may obtain discovery regarding any
> nonprivileged matter that is relevant to any party's claim
> or defense and proportional to the needs of the case,
> considering the importance of the issues at state in the
> action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and
> whether the burden or expense of the proposed discovery
> outweighs its likely benefit. Information within this
> scope of discovery need not be admissible in evidence to
> be discoverable.

As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable. ***Holick v. Burkhart***, No. 16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).

Federal Rule of Civil Procedure 26(c) allows a party to seek a Protective Order to limit or prohibit certain discovery and to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense." The Court may forbid the discovery, specify the terms of the discovery, "including the time and place . . . ," forbid inquiry into certain matters or limit the scope of the discovery. "The court clearly has the broad discretion to direct the timing and sequence of discovery for the convenience of the parties and witnesses and in the interests of justice." ***Sunflower Elec. Power Corp. v. Sebelius***, 2009 WL 774340, *6 (D. Kan. 2009) (citing Fed.R.Civ.P. 26(d)(2)).

**B.	Timing of Depositions.**

Plaintiffs argue that "[t]he current timing of expert witness depositions provides Defendant a formidable strategic advantage which violates fundamental fairness" and that "the order of expert depositions conflicts with the stated goals and purpose of the federal rules regarding expert disclosure." (Doc. 61, at 2.) More specifically,

> [t]he delay of Defendant's expert witness disclosures until after Plaintiffs have disclosed their own experts and offered them up for grilling by deposition creates an unfair advantage for defendant. Defendant is permitted

> to target Plaintiffs' experts and then design defense expert opinions accordingly, to tailor their expert reports and theories based on detailed deposition questioning of Plaintiffs' experts. Such questioning is often guided by specific questions provided directly to defense counsel by defense experts.
>
> Defense experts are therefore allowed to develop their reports to respond in detail to deposition testimony by plaintiffs' experts, and to specifically attack their theories and undermine the "facts" on which plaintiffs' experts relied. Plaintiffs are afforded no such opportunity when developing their own expert witness reports. Likewise, the concomitant requirement that plaintiffs must delay discovery of defense experts until defendant has deposed plaintiffs' experts does not serve the interests of justice and is fundamentally unfair.

(*Id.*, at 4.)

That stated, Plaintiffs concede that

> Rule 26 does not dictate any particular sequence of expert disclosures. **Hill v. Tran**, 2016 WL 6821094, *2, fn. 6 (S.D. Ala. 2016). Instead, Rule 26(d) expressly provides that 'methods of discovery may be used in any sequence,' and 'discovery by one party does not require any other party to delay its discovery.'

(*Id.*, at 3 (quoting Fed.R.Civ.P. 26(d)(3)(A), (B) and ***Jake's Fireworks, Inc. v. Sky Thunder, LLC***, No. 16-2475-JAR-GLR, 2017 WL 3581736, *2, n.6 (D. Kan. 2017))). As Plaintiffs state, "[t]he only exceptions to these principles are by stipulation between the parties or by court orders made 'for the parties' and witnesses' convenience and in the interests of justice." (*Id.* (quoting Rule 26(d)(3)).

5

Defendant responds that Plaintiffs' argument "is simply not supported." (Doc. 66, at 14.)

> Plaintiffs provide no legitimate argument that allowing Defendant to depose Plaintiffs' experts prior to disclosing its experts creates an unfair and improper advantage for Defendant. Plaintiffs too will have an opportunity to depose Defendant's experts after seeing Defendant's experts' reports and after speaking with their own experts about how to potentially attack Defendant's experts. Moreover, the Scheduling Order provides Plaintiffs a rebuttal deadline. Assuming it is proper rebuttal (i.e., not something that should have been raised in Plaintiffs' initial disclosures), Plaintiffs' ability to proffer rebuttal experts alleviates any perceived unfairness.

(*Id.*)

In reviewing the Revised Scheduling Order entered in this case, the Court notes that Defendant's expert deadline was nine and half weeks after Plaintiffs' expert disclosure deadline. (Doc. 33, at 4.) The Court would surmise that Defendant may have anticipated deposing Plaintiffs' experts during this time. To do so would not be unusual in this District. Further, Defendant specifically states that "at [a] recent hearing, the Court agreed to give Defendant thirty days after Plaintiffs' final expert deposition to disclose its experts." (Doc. 66, at 15; *see also* Doc. 50.) The Court has previously addressed this issue. Plaintiffs' motion provides the Court with no legitimate, substantive reason to deviate from its prior decision. As such, Plaintiffs' motion is **DENIED**.

**C.      Witness's Health Issues.**

6

Plaintiffs also contend that Ms. Pankratz has been suffering from "undiagnosed" medical problems and that Defendant has provided supplemental disclosures with "hundreds of pages of additional documents." (Doc. 61, at 8.) According to Plaintiffs,

> [t]hese are additional reasons why her deposition should be moved until after Defendant has made its expert witness disclosures, *i.e.*, to allow Mrs. Pankratz to fully prepare and have knowledge of the complete medical records for Dorothy Funk, records that were not available at the time Mrs. Pankratz issued her expert witness report, for reasons beyond plaintiffs' control.

(*Id.*, at 8-9.)

The Court sees no correlation between Ms. Pankratz's undiagnosed (and unsubstantiated) medical issues and the timing of expert disclosures and depositions in this case based on this information provided by Plaintiffs. Further, according to Defendant, Plaintiffs never requested that the deposition be moved on this basis. (Doc. 66, at 15.) Ms. Pankratz submitted her expert report without reviewing the newly produced documents. In addition, Plaintiffs will be allowed rebuttal expert(s), if necessary. Plaintiffs' motion is **DENIED**.

**D.     Defendant's Motion to Extend Expert Disclosure Deadline (Doc. 66).**

Defendant's brief in opposition to Plaintiffs' motion includes its own motion to extend its expert witness deadline.

> Although Plaintiffs' Motion is wholly improper and has now unnecessarily delayed discovery, by filing the

7

> Motion, it automatically stayed Ms. Pankratz' deposition until after the Court has ruled on the Motion. Defendant would, therefore, request that the Court order Ms. Pankratz' deposition be taken at a time convenient to Defendant's counsel and that Defendant's expert disclosure deadline be set at least thirty days after Ms. Pankratz' deposition.

(Doc. 66, at 15-16.) The Court finds Defendant's request to be reasonable and in accordance with the intent of the Revised Scheduling Order previously entered in this case.

The parties are hereby **ORDERED** to confer and scheduling Ms. Pankratz's deposition for a mutually agreeable time. Thereafter, the parties shall inform the Court of the date for the deposition at which time the Court will extend Defendant's expert disclosure deadline for thirty (30) days thereafter.

**IT IS THEREFORE ORDERED** that Plaintiffs' "Motion for Protective Order and Motion to Quash" the deposition of non-party expert witness Betty Pankratz (Doc. 61) is **DENIED**.

**IT IS FURTHER ORDERED** that the "Motion to Extend Defendant's Expert Disclosure Deadline" filed by Defendant Pinnacle Health Facilities (Doc. 66) is **GRANTED**.

IT IS SO ORDERED.

Dated this 9th day of October, 2018, at Wichita, Kansas.

s/ K<small>ENNETH</small> G. G<small>ALE</small>
HON. KENNETH G. GALE
U.S. MAGISTRATE JUDGE