IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARK FUNK, as Administrator of the
Estate of Dorothy Funk, deceased;
MARK FUNK, as heir at law of his mother,
Dorothy Funk; and ALAN FUNK, as heir
at law of his mother, Dorothy Funk,
      Plaintiffs,

vs.                                                                   No. 17-1099-JTM

PINNACLE HEALTH FACILITIES XXXII., LP,
      Defendant.

MEMORANDUM AND ORDER

      This is a wrongful death action, alleging that the decedent died as the result of a nursing home fall. Defendant operator of the home has moved for summary judgment, contending that the plaintiffs' failure to designate any medical expert to testify to causation is fatal to their claims for negligence. The motion raises two issues. Can plaintiffs establish causation through the testimony of two nurses? And can they do so by relying on the coroner's death certificate? The court answers these questions, respectively, "no" and "yes."

**Findings of Fact**

Clearwater is a skilled nursing and rehabilitation facility. From September 29 to December 1, 2014, Funk resided at Clearwater, except for four days in October when she was at Via Christi St. Francis Hospital. Prior to her death, Funk had multiple health issues, including muscle weakness, edema, depression, atrial fibrillation, hypertension, congestive heart failure, history of seizures, TIAs, coronary artery disease, and chronic kidney disease.

The plaintiffs assert that the 85-year-old Funk fell from her wheelchair and broke her hip on December 1, 2014. She was treated at Via Christi, where on December 2, 2018 Drs. Bradley Dart operated on Funk performing an open reduction of the fracture of her femur with internal fixation.

Funk was discharged and transferred to Life Care Center of Andover. Two weeks later, on December 15, Funk again fell, this time apparently from her bed, and was found on the floor at Life Care Center. Funk died January 7, 2015.

Pinnacle claims that the surgery was successful, but the effects were reversed after Funk suffered the second separate fall.

By prior order, the court dismissed plaintiffs' survival claims against Clearwater. Only the wrongful death claim against the nursing home remains.

Plaintiffs have identified two experts, Betty Pankratz (a Registered Nurse), and Judy Diggs (a Licensed Practical Nurse). Pankratz has a bachelor's degree in education

2

and nursing. Diggs earned her nursing degree through a one-year vocational-technical program, and has worked for some 28 years in providing care to the elderly.

The Amended Certificate of Death completed by Sedgwick County Deputy Medical Examiner Scott Kipper identifies the cause of death as "complications of a left hip fracture" due to a December 1, 2014 fall at the Clearwater nursing home.

**Conclusions of Law**

Pinnacle argues that plaintiffs have failed to present acceptable medical testimony of causation because Nurses Pankratz and Diggs are simply not qualified to give evidence as to Dorothy Funk's cause of death. In support of its argument, Pinnacle cites numerous cases determining that nurses were not qualified to give expert opinions as to medical causation. *See Cunningham v. Riverside*, 33 Kan. App. 2d 1, 99 P.3d 133 (2004) (patient alleging nursing assistant caused leg fracture was required to present "expert evidence to show that her injury was caused by Profit's conduct," especially given evidence of pre-existing osteoporosis); *Giddens v. Via Christi Reg'l Med. Ctr., Inc.*, 338 P.3d 23 (Kan. Ct. App. 2014) ("[a]s a general rule, only expert medical testimony is competent to prove causation in medical malpractice case")

The Funks argue that the nurses are qualified to testify as to the cause of death, citing *Frausto v. Yakima HMA*, 188 Wash.2d 227, 393 P.3d 776 (2017) as recognizing a "majority rule … permit[ting] nurses to express opinions as to medical causation in malpractice actions." (Dkt. 105, at 25). They argue that the testimony of Pankratz and

3

Diggs is admissible under Fed.R.Evid. 702, citing *U.S. Surgical v. Orris, Inc.*, 983 F.Supp. 963 (D. Kan. 1997) and *Wooten v. United States*, 574 F.Supp. 200 (W.D. Tenn. 1982), and cite Kansas decisions such as *Mellies v. National Heritage, Inc.*, 6 Kan.App.2d 910, 636 P.2d 215 (1981) as also "permit[ting] nurses to render opinions on causation." (Dkt. 105, at 28).

The court finds plaintiffs' authorities unpersuasive. *Fausto* does indeed point to a very slight majority among state court decisions—when the question is whether nurses are absolutely and categorically barred from ever addressing the issue of causation.[1] But the case does not support the conclusion that registered nurses or licensed nurse practioners may testify as to medical causation in general, let alone, as here, give an opinion as to the cause of death in cases with a complicated etiology.[2]

Notably, despite an apparently exhaustive exploration of state decisions permitting nurses to testify as expert witnesses (Dkt. 105, at 20-30), the Funks have cited no authority allowing a nurse to testify as to the cause of death. Rather, the cited decisions

---

[1] As the *Frausto* court explained, "[t]he sole issue in this case is whether advanced registered nurse practitioners (ARNPs) are per se disqualified from testifying on proximate cause." 393 P.3d at 777.

[2] *Frausto* is also distiguishable because the case not only involved ARNPs (who generally have a higher level of training as nurses) but because, as the court stressed, ARNPs are explicitly empowered by Washington state law to independently diagnose some illnesses and injuries. 393 P.3d at 780 ("Washington's nursing statutes differ from statutes in other states in that our legislature has empowered ARNPs to diagnose illnesses and injuries to at least a limited degree").

have simply allowed nurses to testify as to other issues. Overwhelmingly, as indeed in *Mellies*, the decisions have centered on the ability of nurses to testify as to bedsores.[3]

To a certain extent, the plaintiffs' argument confuses the ability of a nurse to testify as to a standard of care and as to causation. Thus, citing *Mellies*, Plaintiffs argue that, "Like bedsores, the testimony of the nurses should be permitted because falls in nursing homes are 'primarily a nursing problem,' and the duty for the prevent care, and treatment of falls primarily rests with nursing home, not physicians." (Dkt. 105, at 28). But while preventing falls in nursing homes is a nursing problem, Pinnacle's motion raises the issue not whether it may have violated the standard of care, but the separate issue of whether the fall caused Dorothy Funk's death. In the present case, this determination includes consideration of the fall, but also the effects of the surgery, and a second fall after that surgery on an elderly patient with numerous ailments.

The plaintiffs' citations to two federal decisions are also of little help. In *Wooten*, the court again addressed the ability of a nurse to testify as to the standard of care, not causation. *See* 574 F.Supp. at 209 (finding registered nurse was qualified to give expert testimony that "the care given by VA personnel in this case did not meet the standard of

---

[3] *See Gaines v. Comanche County Med. Hosp.*, 2006 Ok. 39, 143 P.3d 203, 206 (2006) ("in all causes in which the issue of a nurse's expert testimony arose in response to inquiries concerning a patient's development of and the treatment for bedsores, all jurisdictions having addressed the issue allow the testimony")

care which is acceptable among professionals in the medical field, specifically nursing care"). [4]

Nor, in *U.S. Surgical Corp. v. Orris, Inc.*, 983 F.Supp. 963, 967 (D. Kan. 1997), did this court approve the ability of a nurse to give testimony as to medical causation. The plaintiffs' statement (Dkt. 105, at 23) that in *U.S. Surgical* the court "f[ou]nd a nurse qualified to testify as an expert in a products liability action" is inaccurate. The case was not a typical products liability action, but a trademark infringement case, in which the plaintiff manufacturer of disposable medical supplies alleged defendant companies were improperly recycling those supplies for reuse. The case did not directly involve any claims of death or personal injury, and the court did not suggest a nurse would be

---

[4] By Supplemental Notice (Dkt. 122), plaintiffs have also cited *Holt v. Wesley Medical Center*, 2004 WL 1636571 (D. Kan. 2004), where Judge Robinson denied the defendant hospital's *Daubert* motion to exclude the opinion of a registered nurse in a medical malpractice case, which alleged that understaffing resulted in significant injuries to a newborn infant.

However, the defendant in *Holt* did not challenge the nurse as unqualified to offer medical testimony, for the simple reason that the nurse did not attempt to give any diagnosis or explain the infant's resulting medical condtion. Rather, the matter before the court was "the issue of nurse understaffing," with the hospital arguing that the nurse-expert, with her neonatal experience, was "not qualified to render an opinion as to the standard of nursing care on an obstetrical nursing unit." *Id.* at *4.

The court denied the motion, finding the witness could address the issue of undertaffing because she "has supported her conclusion with specific evidence, including Mrs. Holt's medical charts, which showed that the nurses failed to take and record vital signs as required by nursing policies, the patient assignment lists showing that a nurse assigned to Mrs. Holt was also assigned to a different patient and frequent nurse staff changes taking place." *Id.* at *3.

*Holt*, like *Wooten* and other cases cited by plaintiffs, merely establishes that in an appropriate case, a nurse may testify as to a nursing standard of care. But in its present motion, Pinnacle does not challenge Pankratz or Diggs' testimony as to the standard of care, or whether negligence may have caused the first fall. (Dkt. 113, at 13). The issue is whether these nurses offer reliable testimony as to the cause of Dorothy Funk's death, which occurred a month later, after an intervening surgery and a second fall.

qualified to address such issues. Instead, the court addressed the separate issue of the design of medical instruments;

> Here, the proffered evidence relates to Ms. Reichert's opinion that disposable medical instruments cannot be adequately recleaned and resterilized. The basis of her expertise and for her opinion is her thirty years of experience, including her operating room experience in which she has seen numerous unclean and/or faulty reused instruments, her employment experience in which she established a testing program to verify the effectiveness of recleaning and resterilizing, and her consulting experience in which she has visually examined recleaned and resterilized instruments.

*Id*. at 966.

When presented with proposed expert testimony by nurses as to the causation of medical conditions—other than bedsores—most courts have excluded it. *See Gordon v. Sunrise Senior Living Serv.*, 2009 WL 3698527, *3 (D. Col. Nov. 5, 2009) (collecting cases). *See also Peters v. Covenant Care Midwest, Inc.*, No. 8:08CV453, 2009 WL 3020140, at *7 (D. Neb. Sept. 21, 2009); *Richardson v. Methodist Hospital of Hattiesburg*, 807 So.2d 1244 (Miss.2002); *Estate of Gee ex rel. Beeman v. Bloomington Hosp.*, 201 WL 639517, *12 (S. D. Ind. Feb. 7, 2012).[5] And, more particularly, when the issue is the cause of a person's death, the exclusion appears virtually universal.

---

[5] An examination of the eight cases cited in *Frausto*, 393 P.3d at 780 n. 5, as exemplifiying the majority rule provides little support concluding that nurses can give reliable expert testimony as to general medical causation. Three of the cases involve bedsores. *See Mellies v. Nat'l Heritage, Inc.*, 6 Kan.App.2d 910, 918, 636 P.2d 215 (1981); *Gaines v. Comanche County Med. Hosp.*, 2006 OK 39, 143 P.3d 203, 209; *Freed v. Geisinger Med. Ctr.*, 601 Pa. 233, 240, 971 A.2d 1202 (2009). Three of the cases were focused on standard of care rather than causation. *See Sheridan v. St. Luke's Reg'l Med. Ctr.*, 135 Idaho 775, 786, 25 P.3d 88 (2001) ("Nurses Sater and Brown testified that the hospital nurses breached their standard of care" by failing to give notice of progression of jaundice, and that as to causation, "a jury could reasonably and naturally infer from the chain of circumstances that a breach of the standard of care in the first hospital stay proximately caused [infant] Cal's injuries"); *Salter v. Deaconess Family Med. Ctr.*, 267 A.D.2d 976, 976, 701 N.Y.S.2d 586 (App.

7

> "Nurses are not qualified to testify as to the medical cause of injuries." *Long v. Methodist Hosp. of Ind., Inc.*, 699 N.E.2d 1164, 1169 (Ind.Ct.App.1998). Additionally, "[w]hile a registered nurse may possess the education and skill necessary to testify as to the standard of care of a patient's treating nurses, a nurse is not competent to testify as to the patient's cause of death." *Davies v. Holy Family Hosp.*, No. 25960–9, 2008 WL 458617, at *9 (Wash.Ct.App. Feb. 21, 2008) (unpublished op.) (citing *Colwell v. Holy Family Hosp.*, 15 P.3d 210, 213–14 (Wash.Ct.App.2001) (holding "a medical doctor must still generally connect [the decedent's] death to the alleged nursing deficiencies")).

*Vaughn v. Mississippi Baptist Med. Ctr.*, 20 So.3d 645, 652 (Miss.2009).[6]

---

Div. 1999) (plaintiff's expert nurse averred defendant's nurse "deviated from the normal standard of care by placing the washcloth in the microwave oven for one minute because that would cause the cloth to become too hot for the intended use," and defendant's nurse "admitted that the washcloth caused the infant's burns"); *Morris v. Children's Hosp. Med. Ctr.*, 73 Ohio App.3d 437, 447, 597 N.E.2d 1110 (1991) (finding admissible affidavit of nurse who "expressed her opinion that the practice alleged to have caused Melissa Morris's injury was not in conformity with the accepted standards of nursing care"). The remaining cases give little precedential support for the proposition. *See Williams v. Eighth Judicial Dist. Ct.*, 127 Nev. 518, 529, 262 P.3d 360 (2011) ("while Nurse Hambrick may be more than qualified to testify as to proper cleaning and sterilization procedures for endoscopic equipment and can testify on those subjects, he does not possess the requisite skill, knowledge, or experience to testify as an expert witness regarding the medical cause of hepatitis C transmission at ECSN"); *State v. Tyler*, 346 N.C. 187, 204, 485 S.E.2d 599 (1997) (discussing issue in dicta in criminal action, "since defendant did not object on the grounds that the testifying witnesses were not qualified as experts, he has waived his right to later make the challenge on appeal") (quotation omitted).

[6] *See also Peppers v. Washingto County, Tenn.*, 2015 WL 13404333, *2 (E.D. Tenn. Oct. 8, 2015) (nurse was not qualified to testify that cause of death was asphyxiation); *Miller v. Multonomah Cunty*, 2015 WL 3507949, * n. 3 (D. Or. June 3, 2015) ("Under Oregon law, Nurse Alsdorf is not qualified to render an expert opinion as to cause of death."); *Peters v. Covenant Care Midwest, Inc.*, No. 8:08CV453, 2009 WL 3020140, at *7 (D. Neb. Sept. 21, 2009) ("Nurse Stanzel is not qualified to testify as an expert witness regarding the cause of death"); *Richardson v. Methodist Hospital of Hattiesburg*, 807 So.2d 1244, 1247-48 (Miss.2002) ("While [Nurse] Keller is qualified to testify concerning deviations in nursing care and resultant pain and suffering, she is not qualified to testify concerning the causal nexus between these deviations and Wheeless's death"); *Stryczek v. Methodist Hosps.*, 694 N.E.2d 1186, 1189–90 (Ind. Ct. App. 1998) ("nurse witness was not qualified to address standard of care and "is also not qualified to testify as to whether these alleged deviations caused Elizabeth's cardiac damage"); *Highland Pines Nursing Home, Ltd. v. Brabham*, No. 12-03-00221-CV, 2004 WL 100403, at *3 (Tex. App. Jan. 21, 2004) (while a nurse could testify as to causation of nursing home patient's decubitis ulcers, trial court abused its discretion in its "implied finding that Nurse Hogstel is qualified as an expert witness concerning the cause of Mr. Lincoln's death"), *cause dismissed sub nom. In re Highland Pines Nursing Home Ltd.*, No. 12-03-00221-CV, 2004 WL 252099 (Tex. App. Feb. 11, 2004); *Chapman v. South Pointe Hosp.*, 186 Ohio App. 3d 430, 435, 928 N.E.2d 777, 781 (2010) ("the nurse in this case, if otherwise qualified, could aver to the *appropriate standard of* care for nurses," but not "as to proximate cause") (emphasis in

Applying these principles to the present action, the court has no difficulty excluding the opinions of Nurses Pankratz and Diggs as to the cause of death of Dorothy Funk. The plaintiffs have failed to show that the determination of a cause of death falls within their experience, education, or training. *Cf. Mellies*, 636 Kan. at 224 (approving expert nurse testimony as to bedsores, because "their prevention, treatment and cure are largely nursing duties").

The plaintiffs stress the years of experience and training by Registered Nurse Pankratz and Licensed Practical Nurse Diggs. (Dkt. 105, ¶¶ 28-41; 42-61). The cited evidence shows that the witness could provide reliable evidence as to the need to prevent falls in nursing homes, and that a fall may result in a fracture. Otherwise, the cited evidence merely reflects blanket assertions of causation based on reviews of the medical record. Nothing in the cited evidence shows that either Pankratz or Diggs has any prior experience in sorting out the cause of death of an elderly patient with significant existing ailments and an intervening surgery and additional injury in the form of a second fall. Nothing in the cited evidence shows that RNs and LPNs in Kansas are ordinarily or even occasionally tasked with making such complex medical diagnoses. The court accordingly excludes any opinion testimony by Pankratz or Diggs as to causation.

---

original); *Coonce v. Simons*, 520 S.W.3d 821, 824 (Mo. Ct. App. 2017) ("When an expert's opinion as to cause of death is necessary, that expert must be a medical doctor…. Plaintiffs have cited no relevant authority supporting their argument that Nurse Brown's opinion was competent evidence of the cause of Coonce's death")

Pinnacle also argues that the amended certificate of death cited by plaintiffs is insufficient, noting that proof of causation ordinarily requires expert medical testimony. And it is true many Kansas decisions so held — "Except where the lack of reasonable care or the existence of proximate cause is apparent to the average layman from common knowledge or experience, expert testimony is required in medical malpractice cases to establish the accepted standard of care and to prove causation." *Bacon v. Mercy Hosp. of Ft. Scott, Kan.*, 243 Kan. 303, 307-08, 756 P.3d 416 (1988).[7]

But each of the cases cited by Pinnacle involve the distinction between expert testimony and lay witness testimony; there is no indication that the courts were attempting to create a rule that expert opinion evidence may only be presented by live witness testimony. And there are indications to the contrary. In one of the cases in the *Bacon* line of authority, *Karrigan v. Nazareth Convent & Academy, Inc.*, 212 Kan. 44, 510 P.2d 190, 195(1973), the court repeated the general rule and stressed that the plaintiff had "introduced no expert testimony" on the subject of the standard of care, but had "introduc[ed] portions of three medical texts identified by a physician witness as reliable

---

[7] Other cases cited by Pinnacle include *Sharples v. Roberts*, 249 Kan. 286, 296, 816 P.2d 390 (1991) ("Expert medical testimony is ordinarily required to establish a causal connection between the plaintiff's injuries and the defendant's negligence"); *Watkins v. McAllister*, 30 Kan. App. 2d 1255, 1258, 59 P.3d 1021 (2002) ("Expert testimony is required in medical malpractice cases to establish the applicable standard of care and to prove causation."); *Mellies v. Nat'l Heritage, Inc.*, 6 Kan. App. 2d 910, Syl. ¶ 4, 636 P.2d 215 (1981) ("As a general rule in medical malpractice cases, expert testimony is necessary to support the conclusion as to causation"); *Tudor v. Wheatland Nursing* 42 Kan.App.2d 624, 628-29, 214 P.3d 1217 (2009) (whether classified as ordinary negligence or medical malpractice, "expert testimony is necessary only if the matter is outside the common knowledge of the jury").

authorities." The court summarized the contents of those texts, and concluded that in fact "[n]one of these tended to show that Dr. Stone was negligent." *Id*. But if the defendant's theory were true — that only live witness testimony counts — it would not have needed to do so.

More importantly, Kansas courts have given weight to the medical opinions contained in death certificates issued under statutory authority. In Kansas, coroners are public officials licensed to practice medicine and surgery. K.S.A. 22a-226. The coroner is charged to "make inquiries concerning the cause of death" in a wide variety of cases,[8] K.S.A. 22a-232, and reviews both medical records and the records of law enforcement, may investigate the scene of the death, perform an inquest, and, of course, conduct an autopsy. K.S.A. 22a-231. Certified coroner records "shall be received in any court or administrative body in the state as competent evidence of the matters and facts therein contained." K.S.A. 22a-235. And, under K.S.A. 65-2416(a), timely certificates of death "shall be prima facie evidence of the facts therein stated."[9]

---

[8] The coroner is empowered to act where:

> the death is suspected to have been the result of violence, caused by unlawful means or by suicide, or by casualty, or suddenly when the decedent was in apparent health, or when decedent was not regularly attended by a licensed physician, or in any suspicious or unusual manner, or when in police custody, or when in a jail or correctional institution, or in any circumstances specified under K.S.A. 22a-242 [involving the death of children], and amendments thereto, or when the determination of the cause of a death is held to be in the public interest.

K.S.A. 22a-231.

[9] *See State v. Bell,* 239 Kan. 229, 234, 718 P.2d 628 (1986) ("a coroner's report becomes an official public document" admissible under hearsay exception)

11

In *Berthelson v. Developmental Serv. of N.W. Kan.*, 2006 WL 3774332, *6 (Kan.Ct.App. Dec. 22, 2006), the court concluded that "the plaintiffs' failure to proffer expert testimony in that regard was fatal to their wrongful death action" because the issue of causation was too complex for an ordinary person to understand. The court rejected plaintiffs' reliance on a death certificate – not, as Pinnacle would have it, because live testimony is required — but because in that case the certificate was ambiguous, as

> neither [the preliminary nor the final] death certificate establishes the causal link between the alleged negligent acts and Daniel's death. The manner of death portion of both certificates indicated that it could not be determined whether Daniel's death may have been completely natural and unaffected by any prior injuries.

*Id*.

In *Anderson v. K&E Health Mgmt.*, 2006 WL 851471 (Kan.Ct.App. March 31, 2006), the trial court had awarded summary judgment in a wrongful death due to a nursing home fall because the plaintiff had not offered expert testimony of causation. The court of appeals reversed, finding an issue of fact on the issue of causation existed.

> The record also shows Anderson controverted the cause of death of sepsis in her response to K & E's motion for summary judgment by submitting for the court's review Alma's official death certificate, signed by the District Coroner for Douglas County, a forensic pathologist, that indicated the sole cause of death was subdural hematoma. When a person dies under unusual circumstances, the coroner must take charge of the body, make an inquiry into the cause of death, and file a written report. K.S.A.2005 Supp. 22a–231; K.S.A.2005 Supp. 22a–232. The death certificate submitted by the coroner is on file with the Office of Vital Statistics in Topeka. Public records filed by the coroner shall be received in any court in Kansas as competent evidence of the matters and facts included in that record. K.S.A. 22a–235.

*5. The court concluded that because there were "conflicting medical opinions" summary judgment should not have issued. *Id.*

This court addressed the issue indirectly in *Hammers v. Douglas County*, 2016 WL 6804905, (D. Kan. Nov. 16, 2016). The plaintiffs in *Hammers* alleged the decedent died as the result of Alcohol Withdrawal Syndrome while held in the county jail, and in its order the court focused primarily on propriety of the plaintiffs' designation of rebuttal experts on the issue of causation. But the court noted that for their case-in-chief, plaintiffs "relied on the death certificate to initially establish Hammer's cause of death … as 'sudden death due to seizure disorder probably related to acute ethanol withdrawal due to chronic ethanolism.'" *Id*. at *2. The court ultimately held that, once defendants challenged this conclusion, the plaintiffs could properly designate additional rebuttal experts. But the court also indicated it had no problem with the initial reliance on the coroner's report:

> While plaintiffs could have interviewed [coroner] Dr. Mitchell and designated him as a non-retained witness in their case-in-chief, they weren't required to do so. And plaintiffs weren't unreasonable for relying on what was listed in Hammers's death certificate—an official document filed with the State of Kansas.

*Id*. at *3.

The court concludes that, beyond the standard of care, Pankratz and Diggs have not been shown to offer reliable medical expert evidence as to the cause of death of Dorothy Funk. However, the court finds that the amended death certificate creates a trial issue as to the cause of death.

IT IS ACCORIDINGLY ORDERED this day of November, 2018, that defendant's Motion for Summary Judgment (Dkt. 89) is hereby granted in part and denied in part as provided herein.

s/ J. Thomas Marten
J. Thomas Marten, Judge