## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MARK FUNK, *et al.*,      )
      )
      Plaintiffs,   )
      )
v.      )    Case No.: 17-1099-JTM-KGG
      )
PINNACLE HEALTH      )
FACILITIES XXXII, LP, *et al.*,   )
      )
      Defendants. )
_____)

## MEMORANDUM & ORDER ON MOTIONS TO COMPEL

Now before the Court is the Motion for Protective Order (Doc. 128) filed by

Defendant Pinnacle Health Facilities XXXII, LP d/b/a Clearwater Nursing &

Rehabilitation Center (hereinafter "Defendants"). Having reviewed the

submissions of the parties, as well as related case filings, Defendant's motion

(Doc. 128) is **GRANTED in part** and **DENIED in part** as more fully set forth

below.

## FACTUAL BACKGROUND

The factual background of this case was summarized by the District Court

in its Order denying Plaintiffs' Motion to Amend and granting Defendant's Motion

to Dismiss Plaintiffs' negligence claim.

Plaintiffs, Mark Funk and Alan Funk, filed the
present negligence and wrongful death suit against

defendant, Pinnacle Health Facilities, based on Dorothy Funk's fall at the Clearwater Nursing and Rehabilitation Center in Clearwater, Kansas. From September 29, 2014, to December 1, 2014, Dorothy was a resident at the Clearwater Nursing facility.

Plaintiffs allege that on October 1, 2014, Clearwater's records indicate that Dorothy suffered a non-injury fall on the premises and her Care Plan was updated to say, '[p]rovide Dorothy with grabber to alleviate her reaching forward from her wheelchair . . . and endangering [her] safety.' Nine days later on October 10, the Care Plan added or initiated this goal: 'Dorothy will remain free from significant injuries resulting from falls.' Plaintiffs additionally allege that this non-[injury] fall was not reported to Mark Funk, holder of Dorothy's durable power of attorney. Knowledge of the non-injury fall was not made known to Mark or Alan Funk until the medical records were provided after Dorothy's death.

Plaintiffs further allege that on December 1, 2014, Dorothy fell out of her wheelchair while reaching forward, fracturing her hip. According to the Clearwater EMS Report, the fall was unwitnessed, but a Clearwater staff member heard Dorothy screaming after the fall. December 1, 2014, was the last time that Clearwater Nursing provided care to Dorothy.

(Doc. 21, at 1-2.)

Plaintiffs served their Rule 30(b)(6) deposition notice on October 4, 2018 (Doc. 94), more than a year into the discovery process, but six weeks before the close of discovery in this case. Pursuant to the notice, the deposition was to have occurred on October 18, 2018. (*Id.*) Defendant objected to the deposition on October 16, 2018. (Doc. 129-1.) Plaintiffs responded to the objections less than a month later, on November 14, 2018, two days prior to the close of discovery.

(Doc. 129-2.)  On November 16, 2018, Plaintiffs noticed their intent to take

Defendant's Rule 30(b)(6) deposition on December 4, 2018 – which is 8 days after

discovery closed in this case.  (Doc. 118.)  Defendant filed the present motion on

December 3, 2018, the day before the deposition was to occur.  (Doc. 128.)

Defendant argues that Plaintiffs' deposition notice is "improper" because

the deposition was noticed to occur after discovery had closed.  (Doc. 129, at 2.)

Defendant also argues that the deposition should be quashed because "it is

impractical, overly broad, and harassing."  (*Id.*)  Defendant contends that "[t]he

amended deposition notice lacks the 'painstaking specificity' required by law and

it subjects Defendant to an impossible task." (*Id.*)  As such, Defendant asks the

Court to enter a protective order "prohibiting this improper attempt to run-up

Defendant's fees and costs and to otherwise unduly burden and harass Defendant

with unnecessary and irrelevant attempts at discovery."  (*Id.*)

## ANALYSIS

I.    **Legal Standards.**

A.    **Standards for Discovery.**

Fed.R.Civ.P. 26(b) states that

> [p]arties may obtain discovery regarding any
> nonprivileged matter that is relevant to any party's claim
> or defense and proportional to the needs of the case,
> considering the importance of the issues at state in the
> action, the amount in controversy, the parties' relative

access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable. *Holick v. Burkhart*, No. 16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).

### B. Rule 30(b)(6) Depositions.

A Rule 30(b)(6) deposition allows an opposing party to question a corporate defendant by noticing the deposition of the corporation's representative as to certain designated topics. Pursuant to the rule,

> [a] party may in [its deposition] notice ... name as the deponent a public or private corporation ... and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. … The persons so designated shall testify as to matters known or reasonably available to the organization.

Fed.R.Civ.P. 30(b)(6). "In a Rule 30(b)(6) deposition, there is no distinction between the corporate representative and the corporation." *Sprint Communications Co. L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 527 (D. Kan. 2006).

As such, "to allow [Rule 30(b)(6)] to effectively function, the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Id.*, at 528. Thereafter, the responding party is required to "make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the deposing party] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by [the deposing party] as to the relevant subject matters." *Id.* (citing ***Prokosch v. Catalina Lighting, Inc.***, 193 F.R.D. 633, 638 (D.Minn.2000) (quotations omitted)).

### C.  Standards for Protective Orders.

Protective Orders are governed by Fed.R.Civ.P. 26(c), "which confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." ***Layne Christensen Co. v. Purolite Co.***, 271 F.R.D. 240, 244 (D. Kan. 2010) (quoting ***Seattle Times Co. v. Rhinehart***, 467 U.S. 20, 36 (1984)). *See also* ***Thomas v. IBM***, 48 F.3d 478, 482 (10th Cir. 1995); ***Terry v. Unified Gov't of Wyandotte Co.***, No. 09-2094-EFM-KGG, 2011 WL 795816 (D. Kan. March 1, 2011). The rule provides, in relevant part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending.... The motion must include a certification that the movant has in good faith conferred

or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

\* \* \*

(A) forbidding the disclosure or discovery;

(B) specifying terms, including time and place, for the disclosure or discovery;

\* \* \*

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; ....

Fed.R.Civ.P. 26(c)(1).

As stated above, Defendant argues that Plaintiffs' deposition notice is "improper" because the deposition was noticed to occur after discovery had closed and because, as noticed, the deposition is "it is impractical, overly broad, and harassing." (Doc. 129, at 2.) In this context, the Court will analyze Plaintiffs' 30(b)(6) deposition notice.

## II.    Deposition Notice at Issue.

### A.    Timing.

Defendant initially argues that Plaintiffs "unilaterally scheduled" the deposition to have occurred "outside of the Court's mandated discovery period."

(Doc. 129, at 3.)  Defendant contends that "Plaintiffs had 14 months to conduct discovery, but sat on their right to do so" and "did not attempt to Notice a Rule 30(b)(6) deposition of Defendant until October 2018 – a year into a discovery, and just a month before discovery closed."  (*Id.*)  Without citing any authority, Defendant argues that "Plaintiffs' lack of diligence in conducting discovery, alone, is enough for the Court to prohibit this belated attempt to depose the Defendant."  (*Id.*, at 4.)

The Court does not agree with Defendant's position.  Regardless of how much of the discovery process had elapsed, Plaintiffs contacted Defendant with more than six weeks remaining in the discovery period.  It is well-established that courts generally will not interfere with a party's chosen manner and method of discovery.  *McCloud v. Board of Geary County Comm'rs*, No. 06–1002–MLB, 2008 WL 3502436, at *2 (D.Kan. Aug. 11, 2008) (citing *Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.*, No. 9402395–GTV, 1995 WL 625962, at *5 (D.Kan. Oct. 5, 1995)).  The Court finds the same is generally true for the timing and sequence in which a party chooses to complete discovery if that discovery occurs in the time allotted for discovery in the Court's Scheduling Order.

Further, the Court finds Defendant's argument to be misleading.  It is true that the deposition ultimately was noticed for a time *after* the discovery deadline

had expired. That stated, as discussed above, Plaintiffs initially filed the deposition notice on October 4, 2018, more than six weeks before the close of discovery. The deposition was noticed for October 18, 2018, more than four weeks before the close discovery. Although Defendant was within its rights to object to the deposition notice, the reason the deposition did not occur before the discovery deadline was Defendant's objection to the deposition notice. This, in the Court's view, invalidates Defendant's contention that Plaintiffs were not diligent in seeking the discovery. This objection is, therefore, **overruled**.

### B. Cumulative and Burdensome Discovery.

Defendant next argues that the deposition should be quashed because it is cumulative. According to Defendant "courts frown upon Rule 30(b)(6) depositions that seek information that has already been discovered or that could have been available had the party seeking the information exercised diligence." (Doc. 129, at 4.) Defendant concludes that such depositions violate Fed.R.Civ.P. 26(2)(C)(i) & (ii), which require that the Court intervene if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" and if "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action."

In the context of the issues presented to the Court, the key phrase in the portion of this Rule cited by Defendant is "unreasonably cumulative." This phrase infers that cumulative discovery is allowed where it is not unreasonably so. As such, Defendant will be required to establish exactly *how* the various deposition topics are duplicative or cumulative and, if so, how any such duplication is unreasonable.

Similarly, the Court rejects Defendant's general argument that the topics are facially burdensome. While this may very well be so, litigation by its very nature is burdensome. Discovery is not prohibited simply because it is burdensome as responding to any discovery request involves a burden of some level. Discovery must be *unduly* burdensome to be objectionable and Defendant will be required to establish exactly *how* the various deposition topics are unduly burdensome or disproportionate to the case. These objections will, therefore, be discussed in the context of the specific deposition topics, below.

**C.     Objections to Specific Requests in Notice.**

**1.     Procedures relating to falls (Topic 1).**

The first topic in the deposition notice is "[f]acility procedures related to falls, fall prevention, and fall intervention" including "all such policies and procedures that arise from federal or state regulations or statutes, as well as policies and procedures arising from standard practice, training, experience, or

common law." (Doc. 94, at 1.) Defendant objects that the topic is "broad and vague as stated." (Doc. 129, at 8.) Defendant continues by inquiring,

> [a]re Plaintiffs simply asking for the policies to be identified? What areas of inquiry regarding the policies do Plaintiffs have? What are 'common law' policies? The term 'standard practice' is confusing (standard practice of the facility, of Kansas, etc.?), and may call into question expert questioning. The topic also only cites vaguely to federal and state 'regulations or statutes' without specificity.

(*Id.*) The initial topic – facility procedures related to falls, fall prevention, and fall intervention – is self-explanatory. The Court agrees, however, that remainder of this topic unnecessarily complicates and confuses the subject. The Court notes that Plaintiffs' response to the motion does not address these objections. As such, Defendant's objections regarding the remainder of Topic 1 (after the first sentence) are **granted** and this portion of Topic 1 is stricken.

Defendant also argues that this topic "has already been extensively covered in prior discovery" because Plaintiffs served interrogatories and document requests as to Defendant's policies with regards [sic] to falls." (*Id.*) This argument is incorrectly interprets the law on discovery. During depositions, parties are frequently questioned regarding documents produced through discovery. ***White v. Union Pac. R. Co.***, No. 09-1407-EFM-KGG, 2011 WL 721550, at *7 (D. Kan. April 11, 2011) (citing ***Tri–State Hosp. Supply Corp. v. U.S.***, 226 F.R.D. 118, 126 (D.D.C. 2005) (holding that "[b]y its very nature, the discovery process entails

asking witnesses questions about matters that have been the subject of other discovery").

> By its very nature, the discovery process entails asking witnesses questions about matters that have been the subject of other discovery. There are, of course, only a finite number of pertinent events in any lawsuit, and how they occurred is a topic that may be pursued by all forms of discovery, even though the information provided by one form of discovery repeats and duplicates information yielded by another. Thus, the fact that information has been provided to plaintiff concerning a particular category does not, in itself, make that category an impermissible subject of a 30(b)(6) deposition.

*Tri-State Hosp. Supply Corp.*, 226 F.R.D, at 126. Stated another way, a party "should not be prevented from questioning a live witness in a deposition setting just because the topics proposed are similar to written [discovery requests] already served" because this "would essentially limit a plaintiff to the first form of discovery served, since topics are bound to overlap." *New Jersey v. Sprint Corp.*, No. 03-2017-JWL, 2010 WL 610671, at *2 (D. Kan. Feb. 19, 2010).

Defendant also states, however, that "Plaintiffs have also deposed both Defendant's Director of Nursing as well as Defendant's Medical Director and asked both about Defendant's approach to falls and fall prevention." (Doc. 129, at 8.) Plaintiffs, in their response, do not dispute this. That stated, Plaintiffs rely on *New Jersey v. Sprint* to argue that Defendant's argument is misguided. (*See* Doc. 137, at 3-4.)

> [T]his argument overlooks the basic purpose of a
> 30(b)(6) deposition. Rule 30(b)(6) allows an
> organization to designate an individual to 'testify on its
> behalf.' The testimony provided by a corporate
> representative at a 30(b)(6) deposition binds the
> corporation. This is quite unlike a deposition of an
> employee of that corporation, which is little more than
> that individual employee's view of the case and is not
> binding on the corporation. Even if the substance of the
> information ultimately provided mirrors that of the
> testimony given by Sprint's former directors and
> employees, plaintiff still is entitled to tie down the
> definitive positions of Sprint itself, rather than that of the
> individuals who work for Sprint.

*New Jersey*, 2010 WL 610671, at *2. The Court agrees with this reasoning.

Defendant is instructed to provide a 30(b)(6) witness regarding the first sentence of

Topic 1. Defendant's motion is thus **GRANTED in part** and **DENIED in part** as

to Topic 1.

### 2. Care plans (Topic 2).

This topic seeks a corporate deponent as to

> [t]he care plan(s) for Dorothy Funk, including all
> modifications and updates of same and the dates thereof,
> as well as Defendant's understanding of (a) any duties or
> standards of care that applied to Dorothy Funk as a result
> of the care plan(s); (b) all conditions or events which
> required or influenced updating the care plan; (c)
> interventions added to her care plan for falls or fall risk;
> (d) all assessments performed for care plan purposes and
> the results thereof; and (e) all facility policies,
> documentation, or medical records related to this topic,
> 2(a) through (e).

(Doc. 94, at 2.)  Defendant objects that the topic is overly broad, "contains subparts that seek so much information that the outer limit of the information sought is truly impossible to ascertain," and uses undefined, vague terms such as "all 'duties and standards' as well as 'all conditions or events,' 'interventions' or 'assessments.'" (Doc. 129, at 9.)  Defendant also objects that the use of these "terms falls short of the 'painstaking specificity' required by Rule 30(b)(6)."  (*Id*., citing ***Bowers v. Mortg. Elec. Registration Sys., Inc.***, No. 10-4141-JTM-DJW, 2011 WL 6013092, at *6-7 (D. Kan. Dec. 2, 2011).)

The Court notes the irony of Defendant's demand that, on one hand, Plaintiffs be required to use "painstaking specificity" to designate the 30(b)(6) deposition topics while on the other complaining that the subparts, through their verbosity, "seek so much information" so as to be "impossible to ascertain."  (Doc. 129, at 9.)  The Court finds that the topic comes closer to the requested "painstaking specificity" than it does to "impossible to ascertain."  Defendant's objections are **overruled**.

The Court is also not persuaded by Defendant's objections that the information has been provided through other discovery and that Plaintiffs had the opportunity to seek this information earlier in the discovery process.  For the reasons discussed above, these objections are not **overruled**.  Defendant's motion is **DENIED** as to Topic No. 2.

### 3. Assistive devices (Topics 3 and 4).

Topic 3 seeks a corporate deponent regarding "assistive devices" provided to the decedent while Topic 4 relates to such devices "available at the facility … for residents who were considered fall risks … ." (Doc. 94, at 2.) Defendant objects that the topics "use vague and undefined terms" making "the extent of the requests … difficult to ascertain." (Doc. 129, at 10.) Defendant also objects that Topic 4 "would require a representative to be prepared to speak about every possible assistive device available, and then six sub-categories of additional topics on each device," which Defendant finds "untenable and not proportional in any way to the needs of the case." (*Id.*, at 9-10.)

The Court finds the topics to be reasonably ascertainable as they specify that they relate to assistive devices provided to the decedent and/or available to patients who were considered fall risks. This clearly and reasonably limits the scope of these topics. Further, for the reasons discussed above, the Court finds that a deposition on these topics is not unreasonably duplicative of prior discovery in this case. As such, these objections are **overruled** and Defendant's motion is **DENIED** as to Topics 3 and 4.

### 4. Interventions (Topic 5).

This topic seeks a deponent as to "interventions undertaken and/or intended by the facility, at any time, for Dorothy Funk, for her risk of falls or because of

actual falls, from her wheelchair or any other type of fall," then listing seven
subparts that Defendant describes as "expansive and all-encompassing." (Doc. 94,
at 3.) Defendant objects that "[i]nterventions that were 'undertaken and/or
intended' would involve essentially every interaction that any of Defendant's
employees had or intended to have with Dorothy Funk." (Doc. 129, at 11.)
Defendant continues that "[p]roviding testimony as to the 'effectiveness' of each
'intervention' would be nearly impossible." (*Id.*) The Court agrees. This Topic 5,
as written, is facially vague, ambiguous, overly broad, and unduly burdensome.
Defendant's motion is **GRANTED** as to Topic 5.

### 5. Falls by decedent (Topic 6).

This topic requests a deponent regarding the falls decedent took while she
was a facility resident, including documentation and investigations thereof and the
identities of witnesses. (Doc. 94, at 3-4.) Defendant again objects that the Topic is
duplicative of prior discovery. For the reasons set forth above, this objection is
**overruled** and Defendant's motion is **DENIED** as to Topic 6.

### 6. CNA duties (Topic 7).

This topic deals with the "the duties and identity of the CNA's [sic] at the
facility" during the relevant time-period, and includes certain subtopics such as
"the policies and procedures that applied to CNA's [sic]," training provided to
them, "the procedures for informing CNA's [sic] about changes and/or problems in

the status of residents," and facility records and documentation of any event, item, or practice, related to this topic … ."  (Doc. 94, at 4.)  The Court **overrules** Defendant's objection that the information sought is duplicative or cumulative of other discovery in this case.

Defendant also objects that the topic is "grossly overbroad and is not proportional to the needs of this case."  (Doc. 129, at 13.)  The Court agrees that the topic is overly broad as it encompasses and training as to every aspect of a CNA's job and goes well beyond the issues in this lawsuit.  This objection is **sustained** and the Court **GRANTS** Defendant's motion as to Topic No. 7.

## 7.      Director of Nursing (Topic 8).

Topic 8 seeks a deponent regarding "[t]he identity, duties, areas of responsibility, and supervision/supervisors of the Director of Nursing (DON), including the applicable standard of care (SOC) for the DON" during the relevant time-period, "and all job descriptions, job evaluations, disciplinary measures, or other administrative write-ups for that DON, at any time during her employment by defendant."  (Doc. 94, at 4.)  Defendant argues that because Plaintiffs already deposed the Director of Nursing, the request to depose a corporate representative on these topics is "egregious," "cumulative," "impractical and unnecessary." (Doc. 129, at 13.)  For the reasons discussed above, the Court does not agree that

such a deposition would be unreasonably cumulative or unnecessary. These objections are **overruled** and Defendant's motion is **DENIED** as to Topic 8.

### 8. MDS Coordinator (Topic 9).

This topic requests a deponent for issues relating to the "MDS Coordinator" during the relevant time-period. Defendant contends the topic seeks testimony "related to every aspect of the MDS Coordinator's work" and is therefore overly broad and not proportional to the needs of the case. (Doc. 129, at 14.) Defendant argues that "[a]t this stage of the litigation, when discovery has closed and Plaintiffs' experts have already been designated and deposed, any new information that the MDS Coordinator could provide (which would be meager) would have no effect on this case." (*Id.*)

First, given the broad scope of discovery, the Court does not agree that Defendant has established that the deposition testimony will "have no effect on this case." Further, as discussed above, Defendant's repeated contention that "discovery has closed" is unpersuasive given Plaintiffs filed the deposition notice six weeks before the close of discovery. Also, as discussed above, the Court does not find the discovery to be unreasonably cumulative. Defendant's objections are **overruled** and the motion is **DENIED** as to Topic No. 9.

### 9. Assessments (Topic 10).

This topic seeks testimony regarding the assessments performed on decedent by Defendant's staff.  (Doc. 94, at 5.)  Defendant argues that the request is facially over broad and not proportional to the needs of the case.  (Doc. 129, at 14.) According to Defendant, "[i]t would be impossible to adequately prepare a representative to testify as to the scope of this topic" because

> [a]ssessments are done during every interaction with the resident.  In a facility such as Defendant, the caregivers are always assessing the residents, and therefore, compliance with Plaintiffs' request is nearly impossible.

(*Id*.)  The Court agrees that this topic, as worded, is facially over broad and disproportionate to the needs of the case.  Defendant's objections are **overruled** and the motion is **GRANTED** as to Topic No. 10.

### 10.    Wheelchair (Topic 11).

Topic No. 11 requests a deponent to testify regarding the wheelchair(s) used by decedent.  (Doc. 94, at 6.)  Defendant concedes that the topic is "less facially objectionable that the majority of Plaintiffs' other requests," but is "still wholly impractical at this stage in litigation."  (Doc. 129, at 15.)  Defendant does not explain *how* it is impractical at this stage in the litigation, however.

Defendant also objects that the request is cumulative "in light of the fact that Defendant has produced its written policies and procedures."  (*Id*.)  Plaintiffs characterize this production as a "document dump" and contends that specific, requested policies were never produced.  (Doc. 137, at 14-15.)  Regardless of

whether policies were produced in response to a document request, Plaintiffs still have the right to question a deponent about the same topic. *White*, 2011 WL 721550, at *7 (citing *Tri–State Hosp. Supply Corp.*, 226 F.R.D. at 126 (holding that "[b]y its very nature, the discovery process entails asking witnesses questions about matters that have been the subject of other discovery"). *See also New Jersey*, 2010 WL 610671, at *2. The Court **overrules** Defendant's objections and **DENIES** the motion as to Topic No. 11.

### 11.  Medications (Topic 12).

Topic 12 requests a deponent regarding all medications administered to decedent, including policies, dosage, communications with staff and decedent's family about medication, records, and their effects.  (Doc. 94, at 6.)  Defendant is correct that much of this information should come from decedent's treating physician, who was previously deposed by Plaintiffs.  (Doc. 129, at 16.)  Even so, much could be gleaned from a representative of Defendant, particularly as to Defendant's policies and procedures related to medications and monitoring effects of medication or dosage change, communication between Defendant's staff and decedent's family about medications and facility policies related to same. Defendant's objections are thus **overruled** and the motion is **DENIED** as to Topic No. 12.

### 12.  Therapies (Topic 13).

Next is a topic regarding therapies provided to decedent, including the nature and purpose of the therapies, who provided them, and documentation regarding the same. (Doc. 94, at 6.) Defendant objects that this topic is overly broad, not proportional to the needs of the case, and "it would be nearly impossible to prepare a witness to testify as to every aspect of every form of therapy that Dorothy Funk received." (Doc. 129, at 16.) The Court finds that the subject of Topic 13 goes to a basic understanding of decedent's care while a resident of the facility. Defendant's objections are **overruled** and the motion is **DENIED** as to Topic No. 13.

### 13. Medical record keeping (Topic 14).

This topic – which encompasses 8 subparts and more than 250 words – seeks testimony from Defendant as to virtually every aspect of Defendant's medical recordkeeping, including the format, standard of care, importance of accuracy, confidentiality, retention, storage, retrieval, and access. (Doc. 94, at 7.) Many of these issues, such as confidentiality, storage, and retrieval, are clearly unrelated to this case. As such, the Court finds that the topic, as written, is facially overbroad and disproportionate to the needs of the case. The Court will not attempt to rewrite this highly detailed topic to make it appropriate. Defendant's objections are **sustained** and the motion is **GRANTED** as to Topic No. 14.

### 14. Resident rights (Topic 15).

Topic 15 seeks deposition testimony as to policies, documents (including state regulations), and training as to "resident rights."  (Doc. 94, at 7-8.)  Defendant objects that the topic is "not stated with sufficient particularity," and is irrelevant and not proportionate to the needs of the case.  (Doc. 129, at 17.)  The Court is unaware of any issues in this case related to "resident rights" or alleged violations thereof.  Defendant's motion is **GRANTED** as to Topic 15.

### 15.    Factual contentions, defenses, and legal positions (Topics 16 and 17).

This topic requests a deponent to testify regarding "Defendant's factual contentions and legal positions related to the claims, factual contentions, and legal contentions by Plaintiffs in the petition, interrogatory answers, or disclosures." (Doc. 94, at 8.)  Defendant argues that "[t]his Court has recognized that a Rule 30(b)(6) deposition is not the proper forum for discovery as to legal contentions." (Doc. 129, at 17.)  *See In re Independent Serv. Org. Antitrust Lit.*, 168 F.R.D. 651, 654 (D. Kan. 1996) (holding that an attempt to discover factual contentions and legal positions from a party's Answer through a Rule 30(b)(6) deposition "is overbroad, inefficient, and unreasonable," and "implicates serious privilege concerns …).

Plaintiffs respond by quoting a prior opinion from the undersigned Magistrate Judge, which held that a deposing party is not precluded from inquiring as to the opposing party's legal positions in a Rule 30(b)(6) deposition.  (*See* Doc.

137, at 11 (citing ***Waters v. Union Pac. RR. Co.***, 2016 WL 4479127, at *2 (D. Kan. August 25, 2016).)  To the extent the ***Waters*** opinion holds that a 30(b)(6) deposition can proceed regarding legal conclusions and that a protective order would therefore be improper, the undersigned Magistrate Judge reconsiders that conclusion.  The Court acknowledges that an inquiry as to legal conclusions may be appropriate as an interrogatory.  That stated, an interrogatory is answered by a party and/or its representatives with the assistance of legal counsel whereas a deposition inquiry is the direct answer of a party, or in this case, its 30(b)(6) representative.  The Court finds that questioning a lay witness regarding legal conclusions is improper.  If relief is requested in advance of the deposition based on language contained in the deposition notice, the Court should entertain such objections.  As such, this objection is **sustained** and the Court **GRANTS** Defendant's motion as to as to Topics 16 and 17.

### 16.    Expert disclosures or reports (Topic 18).

Topic 18 seeks a corporate deponent regarding the "factual contentions, legal positions, defenses, and claims of comparative fault raised in Defendant's expert disclosures or expert reports … ."  (Doc. 94, at 8.)  Defendant responds that the topic is inappropriate because "the experts will be made available for depositions."  (Doc. 129, at 18.)  The Court agrees that these lines of inquiry are more appropriately raised with designated experts.

Further, requiring Defendant to provide a corporate deponent for these topics is unnecessarily cumulative. Citing authority from the Northern District of Florida, Plaintiffs argue that "[w]hile a Rule 30(b)(6) designee is not required to provide expert testimony, the witness is still expected to be knowledgeable about the facts upon which the experts relied which are reasonably available to the entity being deposed." (Doc. 137, at 13 (citation omitted).)

It is much more productive – and accurate – for the experts themselves to identify the facts upon which they relied in formulating their opinions rather than having another witness attempt to surmise as to the factual bases for the experts' opinions. As such, Defendant's objections are **sustained** and the motion is **GRANTED** as to Topic No. 18.

### 17.  Fall risks (Topic 19).

The next topic asks for a deponent regarding Defendant's "policies and procedures, written or oral, for dealing with residents identified as fall risks, and for interventions and prevention of falls by elderly residents." (Doc. 94, at 8.) Defendant objects that this is cumulative of Topic No. 1. The Court agrees and **GRANTS** Defendant's motion as to Topic 19. Defendant is, however, required to provide a deponent as to the portions of Topic 1 as set forth above.

### 18.  Standard of care (Topic 20).

Topic 20 seeks testimony as to the "standard of care … defendant believes applied to the provision of care" to decedent.  (Doc. 94, at 8.)  Defendant objects that this "is not the purpose of a Rule 30(b)(6) deposition."  (Doc. 129, at 19.)  The Court agrees.  Issues relating to standard of care will be addressed by the appropriately trained and educated medical experts and professionals.  To the extent a party "should presumably be aware of its own standard of care," as argued by Plaintiffs (Doc. 137, at 12), the Court still finds that providing a corporate deponent on this topic is unnecessarily cumulative and duplicative given the expert reports, expert depositions, and opportunity to depose health care professionals in this case.  Defendant's motion is, therefore, **GRANTED** as to Topic No. 20.

### 19.    Organizational structure (Topic 21).

The next topic requests a deponent regarding Defendant's management and organizational structure, including

> the job descriptions of each supervisory or managerial
> staff person; and the role of any committees in
> management, planning, or oversight, including the goal,
> purpose, and makeup of each, and the timing and
> duration of meetings of each such committee; and the
> role of any 'upstream' management agencies,
> corporations, or individuals, such as Pinnacle Health
> Facilities corporate offices.

(Doc. 94, at 9.)  Defendant objects that the topic is vague, overly broad, and "simply has nothing to do with this lawsuit."  (Doc. 129, at 20.)  The Court fails to

see the relevance of this topic and it is not discussed in Plaintiffs' response.  (Doc. 137.)  Defendant's motion is **GRANTED** as to Topic No. 21.

### 20.    Other lawsuits (Topic 22).

The final topic requests a deponent regarding other lawsuits against Defendant "or any related entity," within the five years preceding the death of Dorothy Funk.  (Doc. 94, at 9.)  Defendant objects that this topic is overly broad and vague.  (Doc. 129, at 20.)  The Court agrees.  The topic, as worded, would encompass any and all types of litigation, including those wholly unrelated to malpractice or wrongful death.  As such, the topic is facially irrelevant and not proportionate to the needs of the case.  The Court will not attempt to rewrite the topic.  Defendant's objections are **sustained** and its motion is **GRANTED** as to Topic No. 22.


**IT IS THEREFORE ORDERED** that Defendant's Motion for Protective Order (Doc. 128) is **GRANTED in part** and **DENIED in part** as more fully set forth above.

IT IS SO ORDERED.

Dated this 22nd day of January, 2019, at Wichita, Kansas.

s/ KENNETH G. GALE
HON. KENNETH G. GALE
U.S. MAGISTRATE JUDGE
